## HUNTOON and others *v.* TRUMBULL and others.

*(Circuit Court, W. D. Missouri, W. D.   October, 1880.)*

1. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTIONS OF FACT.

In an action for damages for personal injuries inflicted by being thrown from a buggy attached to a runaway horse, alleged to have been frightened by new and unusual machinery being exhibited on the public street, on the question of negligence of defendants—whether the machinery was kept in the proper place, and in the proper manner, and with due care or otherwise; and whether the machinery, or the smoke or steam issuing therefrom, and nothing else, caused the fright of the horse or not; and on the question of contributory negligence on the part of the plaintiffs—whether the horse was managed with care and prudence, or otherwise; and whether the horse was vicious, and contributed to the accident, or was dangerous in the sense of being disposed to run away,—are questions of fact for the jury to determine from the evidence.

2. SAME—LIVERY-STABLE KEEPERS—OBLIGATIONS.

A livery man is bound to keep safe horses, or fully disclose the character of the horse to the driver at the time of letting him, and may be responsible for wrongful acts in this particular.

3. SAME—DAMAGES.

Where a husband sues for damages for injuries to his wife by being thrown from a buggy in which he was driver, if the injury resulted from the wrongful act of defendants and from no other cause, and the plaintiffs have not contributed by their own acts or neglect, and the accident was not caused by the character of the horse, the defendants are liable in damages.

KREKEL, D. J., *(charging jury.)*   The evidence in this case shows that the firm of Trumbull, Reynolds & Allen were on the fourth day of July, 1879, trading in agricultural machinery, having their place of business on the east side of Walnut, between Fourth and Fifth streets, in Kansas City; that for a number of years, in the course of their business, they had placed and kept standing on the opposite side of the street from their stores a number of machines, among them separators and a traction-engine; that on said fourth day of July they took out a traction-engine from Kansas City to the fair grounds for exhibition.   When the engine was taken back in the early part of the afternoon of the 4th, it was left on the opposite side of the street from their store, in a gutter or ditch designating the limit of the street; the evidence showing the place and manner in which it was left.   Huntoon and wife, (the plaintiffs,) residents of Wyandotte, Kansas, on the said fourth of July came with their family to Kansas City; Mr. Huntoon, wife, and child riding in a buggy, and the two boys in a street car.   While going up Main street they saw the traction-engine on Walnut street.   After going up Main street, they crossed over to Walnut, passed up Walnut some distance, turned

and came back or down Walnut street, one of the boys walking, while the other two children were with their father and mother riding in the buggy.    They thus proceeded down Walnut street, and somewhere near Fifth or south of Fifth the horse ran away, upset the buggy, and threw out the occupants, and it is claimed Mrs. Huntoon was permanently injured by the fall.    The first and most important question you are called upon to decide, under the state of facts in evidence, is, was this act of defendants, in placing the separators and the engine in the condition the evidence shows the same to have been, a wrongful and negligent act, and whether in consequence of this claimed wrong and neglect the injury complained of resulted to plaintiff?   If the act of the defendants was not wrongful and negligent, the defendants are not liable.    But not only must the act of leaving the machinery as shown by the evidence be wrongful and negligent, but such wrong and neglect must have been the cause of the injury complained of.    If the injury to plaintiff was not caused by the wrongful and negligent acts of defendants, plaintiff cannot recover in this action.    In order to arrive at a proper conclusion as to whether the leaving of the separators and the engine as they were left, were wrongful and negligent acts on the part of the defendants, you will, in the first place, consider the machinery so left, its appearance, as well as the necessity, if any, of exhibiting such machinery in the usual course of trade as the means of examination.    Not every new invention in machinery is prohibited from being shown in proper places, in proper condition, and at proper times, because either men or animals may become frightened at the unusual sight.    The question for you to determine is, were the separators and engine kept in a proper place where they were kept, and was the engine kept as prudence and due regard for safety of life and property would dictate it to be kept?   In order to determine this, you may take into consideration the manner and place in which machinery of the kind referred to had been kept by the defendants in the past—the fact that no regulation, so far as shown, prohibits such keeping in Kansas City in the places where the same were kept; not that such want of regulation justifies any wrongful or negligent keeping, but as bearing upon the general question of proper care.

Separators and traction-engines had become articles of common use, and properly kept cannot be complained of because a horse may become frightened on account of them.

If, upon full consideration of the evidence in this case, you shall come to the conclusion that no wrongful action or negligence was com-

mitted by defendants in keeping the separator and engine in the place where the same were kept, and in the manner in which they were kept, as shown by the evidence, you should find for the defendants. But in case you shall not find this issue for the defendants, but find that they committed a wrong, and are guilty of neglect in having kept the machinery in the place and in the manner in which the same were kept, then you should determine whether the wrongful and negligent act of the defendants caused the injury by the plaintiff complained of. All the testimony bearing on this question should be examined by you, and in so doing you should carefully consider as to whether a horse is likely to become frightened at objects such as the machines described by the testimony. You should be satisfied from the testimony that the horse became frightened at the machines, smoke or steam issuing from the engine, if any, and at nothing else, and that such fright caused the running away. You should also be satisfied from the evidence that the horse was managed with ordinary care and prudence; that the individual managing him had not deprived himself by his own acts from a proper management of the horse. And here you may take into consideration, in connection with the rest of the testimony, the fact that four persons were in the buggy at the time the accident occurred. Regarding the character of the horse, you are instructed that if you are satisfied from the evidence that he was dangerous in the sense of being disposed to run away, that fact must be considered with the rest of the testimony in arriving at the cause of the runaway. The knowledge regarding the disposition of the horse by Mr. Huntoon is the knowledge of the wife. If the plaintiff Huntoon or his wife knew nothing of the vicious character of the horse, and yet you are satisfied from the testimony that the horse was vicious, and that, being so, caused or actually contributed to the runaway and consequent injury, you should find for the defendants. The defendants cannot be charged with the consequences of the wrongful act in allowing an unsafe horse to be hitched up, for that would be making them liable for the wrongful act of another. There may be a responsibility in such case, but that responsibility is not upon the defendants. A livery man is bound to keep safe horses, or fully disclose the character of the horse to the driver at the time of letting him, and he may be responsible for wrongful acts in this particular.

As already stated, you are to consider the character of the horse as shown by the evidence, along with the rest of the testimony, in order to arrive at the cause which contributed to the runaway and

accident. The suit is for permanent injury to the wife. The loss of service of the wife, the nursing and expense of nursing, and the doctors' bills, are subjects of another suit brought by the husband on his own account, and you have nothing to do with damages which may have thus arisen. It is the permanent injury to the wife which is in controversy. If such has resulted from the wrongful act of the defendants, and from no other cause, and the plaintiffs have not contributed by their own acts or neglect, or caused by the character of the horse, you are to find for the plaintiff, and estimate her damages, if any.