THE PENNSYLVANIA RAILROAD COMPANY, PLAINTIFF IN ERROR, v. WILLIAM GOODENOUGH ET UX., DEFENDANTS IN ERROR.

In an action by a husband and wife for a personal injury to the wife, his contributory negligence will defeat the suit.

On error.

For the plaintiff in error, *William S. Gummere* and *Samuel H. Grey.*

The above action is brought to recover damages for personal injuries received by Sarah Goodenough, one of the defendants in error, by being struck by one of the trains of the plaintiff in error at a railroad crossing in the village of Moorestown, on August 8th, 1890, while driving with her husband.

The assignment of errors raises three questions :

*First.* Whether the negligence of the defendant in error William Goodenough, if it contributed to the injuries which his wife received, can be imputed to her.

*Second.* Whether, in a joint action brought by a husband and wife, to recover damages for personal injuries received by the wife, the husband has not such a personal interest in the result of the suit as to make his contributory negligence a bar to a recovery.

*Third.* Whether the court erred in submitting to the jury the question of the contributory negligence of the defendant in error Sarah Goodenough.

*First.* The court erred in holding that the negligence of the husband could not be imputed to the wife :

1. Because in all cases where the wife is injured, by the joint negligence of her husband and of a third party, the husband's negligence should be imputed to the wife by reason of their marital relationship, and should bar a recovery. *Shearm. & R. Negl.,* § 46 ; *Carlisle* v. *Sheldon,* 38 *Vt.* 440 ;

*Peck* v. *New York and New Haven Railroad Co.*, 50 *Conn.* 379; *City of Joliet* v. *Seward*, 86 *Ill.* 402; *Yahn* v. *City of Ottumwa*, 60 *Iowa* 429.

In the later case of *Nesbit* v. *Town of Garner*, 75 *Iowa* 314, the doctrine of Thorogood *v.* Bryan is repudiated, and the case of *New York, Lake Erie and Western Railroad Co.* v. *Steinbrenner*, 18 *Vroom* 161, and other cases in the same line, are cited with approval; the case of Yahn *v.* Ottumwa being declared to rest, not upon the doctrine of agency, but entirely upon the marital relationship existing between the parties, and therefore not opposed to the case then being considered.

2. Because, in this particular case, the evidence shows that the husband, at the time of the accident, was acting as the agent of the wife, and therefore his negligence is imputable to her.

They were engaged in the business of making and selling butter, and both took part in its delivery to their customers. It was while engaged in making such delivery that the accident happened.

*Second.* The second question raised by the assignment of error is, whether, in a joint action brought by the husband and wife to recover for the personal injuries of the wife, the husband has not such a personal interest in the result of the suit as to make his contributory negligence a bar to a recovery.

The answer to this question depends upon whether the wife, by reason of the enfranchisement of the Married Women's act, is entitled to the damages recovered, as if she were a *feme sole*, or whether the rule of the common law still prevails, in this class of cases, and the husband has a right, by reducing to his possession the damages recovered, to make them his absolute property.

Whether the common law still prevails in this class of cases depends upon whether or not a right of action for a personal tort is property; if it is, then, by virtue of the Married Women's act of this state, a right of action for a personal tort to a married woman is her separate estate to the same extent as if she were unmarried; if it is not property, then it is not

affected by the Married Women's act, and the common law right of the husband still exists to reduce the damages recovered to his possession, and make them his absolutely.

The decisions of other states on this question, resting, as they do, upon the statutes of those states, can be of very little aid in the solution of this question except in those cases where such statutes are similar to our own. There are a number of decisions, mostly of the courts of some of the western states, which hold that a right of action for a personal tort is personal property, and therefore the separate estate of the wife. My examination of these cases shows that some of them are based upon the fiat of the legislature, that "rights of action growing out of any violation of the personal rights of a married woman shall be her separate property," and that others of them declare a right of action for a personal injury to be property, without giving any authority or any reason for such declaration.

At common law, a right of action for a personal tort was not property. It did not pass under the English Bankrupt acts, which vested all the property of the bankrupt, both real and personal, in his assignee. *Howard* v. *Crowther*, 8 *Mees. & W.* 602.

It is a mere personal right, has no elements of property, and is not assignable. *Rice* v. *Stone*, 1 *All.* 566; *Gardner* v. *Adams*, 12 *Wend.* 297; *North* v. *Turner*, 9 *Serg. & R.* 244.

An examination of our statutes will show that, whatever may be the case elsewhere, it was not the intention of the legislature of New Jersey to make a right of action of this kind of property, or, at least, that it did not intend to make such a right of action the property of the wife.

The first, second and third sections of our Married Women's act (*Rev., pp.* 636, 637) provide that the real and personal property of every married woman, and the rents, issues and profits thereof, no matter how obtained, shall be her sole and separate property, as though she were a single woman.

The expression, "rents, issues and profits thereof," contained in this part of the act, seems, in itself, to afford a test

by which to ascertain whether or not a right of action of this character is property within the meaning of the act. If it is something which produces either rents, issues or profits, then it is property within the contemplation of this statute, but if it is something which cannot, by any possibility, produce either rents, issues or profits, then it is not such property. That neither rents, issues nor profits arise out of a right of action of this kind, goes without saying.

But the act affords another test, which is conclusive.

The eleventh section of the act (*Rev., p.* 638) provides that "she may maintain an action in her own name, and without joining her husband therein, for all breaches of contract and for the recovery of all debts, wages, earnings, money and all property which, by this act, is declared to be her separate property, and she shall have, in her own name, the same remedies for the recovery and protection of such property as if she were an unmarried woman."

It is clear, therefore, that if such a right of action as is now under consideration is property, within the meaning of sections 1, 2 and 3 of the act, then it necessarily follows that, for the recovery of such property, a married woman is entitled, by virtue of the provisions of section 11 of the act, to bring an action in her own name, without joining her husband therein, and also that the converse of this proposition must be true, and that, if a married woman cannot bring an action in her own name, and without joining her husband therein, for the enforcement of such right, then it is not property within the meaning of sections 1, 2 and 3 of the act.

Can, then, a married woman maintain an action in her own name, without joining her husband therein, for an injury done to her?

A reference to the twenty-second section of the Practice act (*Rev., p.* 851) answers this question in the negative. That section declares that "in any action by a husband and his wife, for an injury done to the wife, in respect of which she is necessarily joined as co-plaintiff, it shall be lawful for the

husband to add thereto claims in his own right arising *ex delicto.*"

Two things clearly appear from this section:

1. That in suits of this kind, both the husband and wife must be joined as co-plaintiffs; in other words, that the common law still governs such cases, the common law rule being that " when an injury is committed to the person of the wife, during coverture, the wife cannot sue alone in any case, and the husband and wife must join." 1 *Chit. Pl.* *73.

This alone would seem to be conclusive. If the husband and wife must join in bringing the action, then the right is not such property as became the separate estate of the wife by virtue of the Married Women's act, and consequently is still subject to the rules of the common law.

2. It also clearly appears, from the section referred to, that the husband has a personal interest in the verdict recovered for the wife's injury, because it permits him to add claims in his own right, arising *ex delicto.* If those claims are established, the damages to which he is entitled must necessarily be included in the verdict. If the husband has no personal interest in the suit or in its result, on what theory is he permitted to join a claim in his own right? If his common law right to reduce to possession the damages allowed as compensation for his wife's injuries no longer exist, how is a verdict which compensates both the wife for her injury and the husband for his wrong to be apportioned between them?

But if any doubt on the subject still remains after considering section 22 of the Practice act, that doubt is swept away by an examination of section 24 of the same act. *Rev., p.* 851.

That section provides that " any married woman living separate from her husband may bring suit in her own name for the recovery of damages for any injury done to her person or reputation; and it shall not be lawful for the husband of such married woman to control, discontinue, release or in any way interfere with such action."

This is an enabling act. It confers upon married women,

under certain conditions, a right which, except for this statute, they would not have.

If the Married Women's act has the force claimed for it by the defendants in error, then section 24 of the Practice act is absolutely without force or effect.

Both of these acts were approved on the same day, March 27th, 1874. Neither of them supersedes the other, and it is the duty of this court to so construe them as to make them both operative to the fullest extent possible. This can only be done by holding that, by virtue of this twenty-fourth section, married women, when living separate from their husbands, may sue in their own names for injuries done to their persons or reputations, and that the husbands of such married women shall not have a right to control, discontinue, release or in any way interfere with such suits, but that injuries received by married women who are living with their husbands can only be sued for by the husband and wife jointly, and that the common law right of the husband to control, discontinue or release the same still exists.

That this is the right of the husband at common law will not, I presume, be disputed. I refer, however, to the following cases on the subject: *Beach* v. *Beach,* 2 *Hill* 260; *Anderson* v. *Anderson,* 11 *Bush* 327; *Coolidge* v. *Parris,* 8 *Ohio St.* 594; 1 *Bish. Mar. W.,* §§ 705, 910–912.

I call particular attention to the last part of section 912, in *Bishop on Married Women,* in which the author states that "this is a branch of the common law of married women which has not been generally altered by the statutes in our several states."

I respectfully submit that, whatever may be the law elsewhere, in this state, at least, the husband still has a personal interest in the compensation received for injuries inflicted upon the wife, and that, this being so, the court erred in refusing to charge the fifth request of the plaintiff in error.

It is hardly necessary to add that, if the common law right of the husband, as above stated, still exists, there can be no recovery if he contributed by his negligence to bring about

the accident which caused the injury sued for. 1 *Bish. Mar. W.*, § 912; *Tibbs et ux.* v. *Brown,* 2 *Grant* 39.

*Third.* If it should be held that the first and second points in this brief are not well taken, then I submit that the court below erred in leaving it to the jury to say whether the defendant in error Sarah Goodenough was guilty of contributory negligence.

If the marital relations of the parties have no bearing on this suit—if the husband was not the agent of the wife in this particular case—then she was chargeable with the same duties as if she had been alone at the scene of the accident.

She was bound both to look and to listen for approaching trains.

She says that she listened, but it is evident that she didn't listen with that degree of care which the law requires, for she says, on her direct examination, that she didn't hear the rumbling of the train until after they got on the track.

She further says that she looked, but she adds that she couldn't see anything, because her husband was in the way.

She also states that she did this when they were twenty-five or thirty yards from the railroad, and that, after this attempt, she didn't look again until the accident happened.

This method of looking and listening hardly comes up to the standard required by our decisions, and I submit that there should have been a nonsuit granted at the close of the plaintiff's case.

In each of the instances pointed out, I submit that there was error committed by the court below, and that the verdict should therefore be set aside and a new trial granted.

For the defendants in error, *John W. Wescott* and *Samuel K. Robbins.*

Only two questions are raised by the errors assigned :

*First.* Whether the question of the contributory negligence of the plaintiff Sarah Goodenough should have been submitted to the jury.

*Second.* Whether the plaintiff Sarah Goodenough could have her husband's contributory negligence (if any) imputed to her.

I. The question of the contributory negligence of the plaintiff Sarah Goodenough was properly left to the jury.

In actions for personal injuries, caused by railroad trains, where there are doubtful and qualifying circumstances, or where some negligence on the part of the plaintiff does not clearly appear, the question of negligence or want of proper care must be left to the jury. *Central Railroad Co.* v. *Moore,* 4 *Zab.* 824; *New Jersey Railroad Co.* v. *West,* 4 *Vroom* 430; *Pennsylvania Railroad Co.* v. *Matthews,* 7 *Id.* 531; *Delaware, Lackawanna and Western Railroad Co.* v. *Toffey,* 9 *Id.* 525, 529; *Bonnell* v. *Delaware, Lackawanna and Western Railroad Co.,* 10 *Id.* 189; *Berry* v. *Pennsylvania Railroad Co.,* 19 *Id.* 141.

II. The contributory negligence of the husband (if any) in this case, could not be imputed to the wife:

*First.* Because "contributory negligence, to defeat a right of action, must be that of the party injured." *Express Co.* v. *Nichols,* 4 *Vroom* 434; *Paulmier* v. *Erie Railroad Co.,* 5 *Id.* 151; *Lake Erie and Western Railroad Co.* v. *Steinbrenner,* 18 *Id.* 161, 167; *Smith* v. *Irwin,* 22 *Id.* 507, 512.

*Second.* It is well settled that, had the plaintiff Sarah Goodenough been riding with any other person than her husband, or one who was her servant or agent, under like circumstances, the driver's contributory negligence could not be imputed to her. *Bennett* v. *New Jersey Railroad Co.,* 7 *Vroom* 225; *Lake Erie and Western Railroad Co.* v. *Steinbrenner, ante; Robinson* v. *New York Central and Hudson River Railroad Co.,* 66 *N. Y.* 11; *Dyer* v. *Erie Railway Co.,* 71 *Id.* 228; *City of Michigan City* v. *Boeckling,* 122 *Ind.* 39, 42; *Dean* v. *Pennsylvania Railroad Co.,* 129 *Pa. St.* 514; *Ell. Roads & S.* (1890) 631, 632, and cases cited.

*Third.* That the driver of the vehicle was her husband can make no difference in the application of the principle established by the authorities just cited.

1. None of the authorities or cases holding that the contributory negligence of the husband, driving the vehicle in which she was hurt, should be imputed to the wife, in bar of the action, are based upon the relationship existing between them, or on the fact that they were co-plaintiffs in the action; while all of the cases assigning any reason for so holding are in direct antagonism to the Bennett and Steinbrenner cases above cited. *Beach Con. Negl.* (1885) 113, 114, and cases cited.

*Peck* v. *New York, &c., Railroad Co.*, 50 *Conn.* 379, is based entirely on *Shearm. & R. Negl.*, § 46, and *Carlisle* v. *Sheldon*, 38 *Vt.* 440, which latter case is the only case cited by the text book last mentioned, and is in direct antagonism to the Bennett and Steinbrenner cases.

*Yahn* v. *City of Ottumwa*, 60 *Iowa* 429; *Huntoon* v. *Trumbull*, 2 *McCrary* 314; *Gulf, &c., Railroad Co.* v. *Greenlie*, 62 *Tex.* 344, and *City of Joliet* v. *Steward*, 86 *Ill.* 402, cite no authorities whatever in support of the position taken, give no reason for it, and are clearly entitled to little or no weight.

2. The cases holding that the contributory negligence of the husband should not be imputed to the wife, are in harmony with the decisions in this state and are well-considered cases, to wit: *Hoag* v. *New York Central and Hudson River Railroad Co.*, 111 *N. Y.* 199, 202; *Miller* v. *Louisville, New Albany and Chicago Railway Co.*, 128 *Ind.* 97; *Louisville, New Albany and Chicago Railway Co.* v. *Creek*, 130 *Id.* 139; *Flori* v. *St. Louis*, 3 *Mo. App.* 231.

3. The husband being joined as co-plaintiff in this action can have no possible weight in the solution of this question.

He is at most a mere formal party to this suit, and has no substantial interest in the result, the damages sustained by him having been eliminated from the case.

It is extremely doubtful whether it was even necessary for the wife to join him with her as plaintiff to maintain her action. "The right of the husband to the wife's choses in action, as well as to her other property, real and personal, was extinguished by the act of 1852." *Rev., tit. "Married*

*Women," pp.* 636, 637, §§ 1, 2, 3; *Vreeland* v. *Vreeland's Administrator,* 1 *C. E. Gr.* 512, 522.

"The husband, by virtue of the act, was deprived of the control which he had by the common law. He was prevented from recovering possession of and acquiring title to the personal property of the wife during coverture." *Compton* v. *Pierson,* 1 *Stew. Eq.* 229, 231.

While the statutes of this state do not, in terms, authorize a married woman to bring suit in her own name for the recovery of damages for any injury done to her person, except where she is living separate from her husband (*Rev., p.* 851, § 24), they do authorize "an action by her in her own name, without joining her husband therein, for  *  *  *  all property, both real and personal, which by this act [Married Women's] is declared to be her separate property." *Rev., p.* 638, § 11. The same act (*Rev., p.* 637, § 3) provides that "the real and personal property  *  *  *  which any married woman has received or obtained since the first day of July, one thousand eight hundred and fifty-two, or which she shall hereafter receive or obtain, by purchase, gift, grant, devise, descent, bequest, or in any manner whatever, shall be her sole and separate property, as though she were a single woman." See, also, *Van Cleve* v. *Rook,* 11 *Vroom* 25.

A right of action growing out of a personal tort to a married woman, is held to come within the description of "property acquired in any manner." *Stew. H. & W.* (1885), §§ 219, 230, 447; *Chicago* v. *Dunn,* 52 *Ill.* 260, 263; *Berger* v. *Jacobs,* 21 *Mich.* 215, 220; *Leonard* v. *Pope,* 27 *Id.* 145, 146; *Stevenson* v. *Morris,* 37 *Ohio St.* 10, 17.

Nor does the husband acquire any substantial interest in the judgment recovered in this suit by reason of being joined as co-plaintiff. *Stew. H. & W.,* § 447; *Vreeland* v. *Vreeland's Administrator, ante; Compton* v. *Pierson, ante; Klein* v. *Jewett,* 11 *C. E. Gr.* 474.

4. There are no facts in this case which would warrant the court in holding that the husband was the servant or agent of

the wife, and that his negligent conduct, if any, could be imputed to her on that ground.

It has been repeatedly held in this state that "the driver cannot be converted into the servant of the passenger, for the single purpose of preventing the passenger from bringing suit against a third party whose negligence has co-operated with that of the driver in the production of the injury. The identification must be so complete that the passenger would not only be debarred from a suit against the proprietor of the coach for the driver's negligence, but would also be responsible to third persons for injuries sustained by the carelessness of the driver in the course of the journey." *Bennett* v. *New Jersey Railroad and Transportation Co.*, 7 *Vroom* 225, 227; *New York, Lake Erie and Western Railroad Co.* v. *Steinbrenner*, 18 *Id.* 161, 170. And see, also, *Newman* v. *Phillipsburg Horse Car Railroad Co.*, 23 *Id.* 446, 450.

Respectfully submitted that there was no error in the trial of this cause, and that the judgment below should be affirmed.

The opinion of the court was delivered by

REED, J.  This action was brought by a husband and his wife to recover for an injury to the wife, caused by a collision between the wagon in which they were driving and a train on the railroad of the plaintiffs in error. At the trial it was urged by the defence that the husband, who was driving, was negligent, and that his negligence contributed to the wife's injury.  The trial justice, however, charged that the negligence of the husband could not be imputed to the wife. This is assigned for error.

To ascertain how far the conduct of the husband affects the right to recover in an action of this kind, it is essential that the posture of the husband in relation to the suit shall be ascertained. If he is a party interested in the subject-matter of the action, then it follows that he cannot be permitted to recover when his negligent conduct contributed to the creation of the cause of the action.

The rule at common law is entirely settled that for a tort to the wife, either *ante* or *post-nuptial*, the husband must be

joined with the wife in an action.  *Dic. Part.*; 1 *Chit. Pl.*
73; *Com. Dig.*, *tit. "Baron and Feme,"* V.; *Shoul. H. & W.*
141.

Upon the rendition of judgment, the husband has the right
to receive the money.  *Bish. Mar. W.*, § 913.

So completely is the husband identified with the prosecution
of the action that he can release the cause of action.  *Beach*
v. *Beach*, 2 *Hill* 260; *Ballard* v. *Russell*, 33 *Me.* 196; *South-
worth* v. *Packard*, 7 *Mass.* 95; *Anderson* v. *Anderson*, 11
*Bush* 327; *Bish. Mar. W.*, § 912.

If the wrong to the wife is inflicted through the conniv-
ance of the husband, his conduct is an answer to the action,
although he may press the suit.  *Tibbs* v. *Brown*, 2 *Grant* 39.

So, his power over the action and the effect of his conduct
upon the result are entirely settled at common law.

There can be no doubt that if his negligence assisted to
create the cause of action, it would, at common law, be a com-
plete defence to the action.  Has this been changed by any
legislation in this state?  I think it quite clear that it has not.

On referring to the act relating to the property of married
women (*Rev.*, *p.* 636), we find that the real and personal prop-
erty of every married woman, and the rents, issues and profits
thereof, shall be her sole and separate property.  Personal
torts do not create rights of property.  The right to sue for
such is not assignable.  They do not survive the death of the
injured person, because, in the language of Lord Ellenborough,
in *Chamberlain* v. *Williamson*, 2 *Mau. & Sel.* 408, "executors
are the representatives of the temporal property—that is, the
debts and goods of the deceased—but not of their wrongs,
except where those wrongs operate to the temporal injury of
the personal estate."

The language of the section itself is inapplicable to a right
to sue for a tort, for no rent, issue or profit, in the sense of
the statute, can arise out of a tort.

Section 11 of the act provides that she may maintain an
action in her own name and without joining her husband
therein, for all breaches of contract or for the recovery of all

debts, wages, earnings, money and all property which, by this act, is declared to be her separate property, and she shall have in her own name the same remedies for the recovery and protection of such property as if she were an unmarried woman.

If a right to sue for a tort is property, then, by force of this section, the husband was an unnecessary party to this action.

Yet, section 22 of the Practice act obviously refers to this class of personal torts, in an action for which both must join. This section provides that in any action by a husband and wife for an injury to the wife, in respect of which she is necessarily joined as co-plaintiff, it shall be lawful for the husband to add thereto claims in his own right arising *ex delicto*. This is a copy of section 40 of the Common Law Procedure act of 1852 (15 and 16 *Vict.*, c. 76), which undoubtedly refers to personal injuries to the wife, in actions to recover damages for which husband and wife must sue jointly.

If any doubt remained in respect to the general rule in this state that the husband must join with the wife in actions for personal injuries to the wife, it would be dissipated by section 24 of the Practice act, which states the exception to the rule in such terms as to show the existence of the rule itself.

This section provides thus: "Any married woman, being in a state of separation from her husband, may bring suit in her own name for the recovery of damages for any injury done to her person or reputation; and it shall not be lawful for the husband of such married woman to control, discontinue, release or in any way interfere with such action; but the same shall proceed and be under the control and direction of said married woman, as if she were a *feme sole.*"

So, it is perceived that in all instances except when the *feme covert* is still living in a state of separation from her husband, he retains his common law power of control over and interest in the action. The husband has not a mere power to sue for the wife, but he has a power coupled with an interest in the suit.

Retaining this control over the suit and this right to release,

and consequently to compromise it for money, he cannot be permitted to create the cause of action by his negligent or fraudulent conduct and then reap the benefit which this interest in the action confers.

We think the charge in this respect was erroneous and the judgment must be reversed.

DIXON, J. (dissenting).    The plaintiffs, William Goodenough and Sarah, his wife, were riding along a public street across the railroad of the defendant, in a wagon drawn by a horse which was driven by the husband, when a collision between the vehicle and a train of the defendant occurred, and the wife received severe bodily injury.    This suit was brought to recover compensation for the injury thus suffered by the wife, and a verdict was obtained assessing *her* damages at $2,700, upon which a judgment was rendered that she recover that sum against the defendant.    On writ of error to review this judgment, the only serious question presented on the record is whether the trial justice erred in charging the jury that, unless the husband was acting as agent of the wife, his negligence was not imputable to her.    It is insisted by the defendant that such negligence should be so imputed, because of the marriage relation and the legal necessity therefrom arising of joining the husband as a plaintiff in the suit.    The argument rests upon the premise that the husband has a legal interest in the cause of action, and in whatever compensation may be recovered, and thence is deducted the conclusion that the husband's contributory negligence must preclude any recovery.

I deny the premise.

It must, of course, be remembered that we are not dealing with the damages which a husband sustains by the physical injury of his wife, such as the expenses of her cure and the loss of her service and society.    These must be sued for by the husband alone (except as our statute permits them to be joined with such a cause of action as is now before us).    Against the husband's claim for those damages no doubt his

contributory negligence would be a defence. But the cause of action now under consideration is the direct injury to the wife's person and the loss which she as an individual thereby suffers. In such a cause of action, and in any recovery at law thereupon, the husband, I think, has no legal interest.

It may be assumed that such a cause of action, before it is merged in a judgment, does not come within the legal notion of "property." In Blackstone's classification of the various kinds of property (2 *Bl. Com.* *438), he ranges damages for injury sustained as property acquired and lost by suit and judgment at law, saying that, although the injured party has a right to damages the instant he receives the injury, and this right is given by the law of nature, yet a judgment is necessary to convert this right into "property." So far as this classification excludes from the legal definition of property a right to damages for an injury to property, it has been criticised, but with regard to an injury to the person it seems to be generally accepted as correct.

Assuming its correctness, our Married Women's acts, which relate to a wife's property only, do not affect the right to these damages before judgment, and therefore we must consider whether the husband had a legal interest in such damages at common law.

It must be admitted that the husband was a necessary party to be joined with his wife in a suit for the recovery of such damages. But this was not because of his legal interest in the damages. He was a necessary co-plaintiff with his wife in all suits at law for the vindication of her rights. Even when he had relinquished his power over his wife's rights, he was so joined. *Innell* v. *Newman*, 4 *B. & Ald.* 419. And after our statute had terminated the husband's interest in his wife's property, but before the later statute, authorizing a married woman to sue alone for her property, it was necessary that her husband should be joined as a co-plaintiff. So that the necessity of joining him in the suit is not indicative of any legal interest in the cause of action. As is frequently stated in the books, he is joined for the sake of conformity.

It may also be admitted that, unless he had surrendered his power, the husband could settle for the damages or could release the wrongdoer from responsibility to the wife. *Southard* v. *Packard,* 7 *Mass.* 95 ; *Anderson* v. *Anderson,* 11 *Bush* 327 ; *Beach* v. *Beach,* 2 *Hill* 260 ; *Ballard* v. *Russell,* 33 *Me.* 196. This, however, arose not from the theory that the damages belonged to the husband, but from the power which he had over all rights of action belonging to his wife. He could make them his by reducing them to his own possession. Settling for the damages was so reducing them, and releasing the wrongdoer was deemed equivalent to settlement. The distinction between a husband's power over his wife's rights in action, and a legal interest in them, forms the basis of decision in *Stall* v. *Fulton,* 1 *Vroom* 430, and *Peterson* v. *Mulford,* 7 *Id.* 481, where it was held that the husband's creditors had no claim on such rights of the wife, unless the husband had chosen to exercise his power over them so as to make them his own. If, without the exercise of such power, those rights were the property of the husband, the claims of his creditors could not have been denied.

Having thus noticed those rules of the common law which might seem to favor the contention of the defendant, and having shown that they presuppose nothing antagonistic to the dictate of nature that compensation for a personal injury should belong to the person injured, it must further be noticed that there are rules of the common law which clearly recognize this natural claim as legally subsisting in the case of married women.

In an action for a battery or other personal tort done to the wife, the wife must join. *Bac. Abr., tit. "Baron and Feme,"* p. 306. She must join because she is the meritorious cause of action, the husband joining for conformity only. *Dengate et ux.* v. *Gardiner,* 4 *Mees. & W.* 6. If the husband dies before or pending the suit, the right of action survives to the wife. *Bac. Abr., tit. "Baron and Feme,"* p. 304. But if the wife dies before or pending suit, the right of action is

extinguished. *Id., p.* 306 ; *Stroop et ux.* v. *Swarts,* 12 *Serg. & R.* 76.

In view of the common law maxim, *"Actio personalis moritur cum persona,"* these rules plainly indicate to whom the right of action belongs. Because it survives the husband, it is not his : it dies with the wife because it is hers.

I conclude, then, that at common law the husband has no legal interest in the right or cause of action which accrues to a married woman for a tort to her person. He has some power over it but no legal interest in it.

I have said that our Married Women's acts do not seem to affect this right of action ; yet it would be entirely in accord with the spirit of those laws if, by judicial construction, their terms were made to embrace it. That the legislature should have placed all a wife's real and personal property, and the rents, issues and profits thereof, beyond her husband's power of disposal, and made them her sole and separate property, as though she were a single woman, and should have left this most intimate right, which concerns her very existence, unsecured to her, can be reasonably accounted for only on the ground of inadvertence.

But the defendant's argument is rested, also, upon the supposition that the husband has a legal interest in the compensation recovered in a suit for his wife's personal injury. This support, likewise, in my opinion, fails.

When a recovery has taken place—when the cause of action has become merged in a judgment—then I think our Married Women's acts become operative upon it. As already stated, the judgment is property, and all property received or obtained by a married woman, in any manner whatsoever, belongs, by force of the statute, to her alone, as if she were a single woman. It may be suggested that the judgment being recovered by the husband and wife together, the property is not received or obtained by the wife, within the meaning of the statute. The same thing might be urged with respect to a chattel given by a third person to the wife, but delivered

to the husband for her. At common law, it would have been absolutely his; but now, I presume, he would be deemed a mere agent in the transaction, and the chattel would be hers. Similarly, in this case, the husband appears with his wife in obtaining the property, but it is obtained on her account and for her, and, within any just view of the statute, it is obtained by her and not by her husband.

Reason seems, therefore, to lead to the conclusion that the husband has no legal interest in such a judgment as is now before us.

Turning to previous judicial decisions, they appear to tend in the direction above pointed out. Counsel for the defendant relies upon *Carlisle* v. *Sheldon*, 38 *Vt.* 440; *Peck* v. *New York and New Haven Railroad Co.*, 50 *Conn.* 379; *City of Joliet* v. *Seward*, 86 *Ill.* 402, and *Yahn* v. *City of Ottumwa*, 60 *Iowa* 429. While in these cases it was said that the negligence of a husband driving would be imputed to the wife riding with him, yet in every case the imputability was placed, not on the relation of husband and wife, but on that of driver and passenger. This will be seen by a quotation from the opinion in *Carlisle* v. Sheldon, which is the only case of husband and wife cited in the other decisions. The Vermont court said: " The wife stands in no different position from that which she would occupy if the driver of the vehicle in which she was carried had been, instead of her husband, one employed for that purpose. * * * If she had been a passenger in a stage coach on this occasion, and had received the same injury, * * * the driver would be treated as being her agent. * * * There is nothing in the marital relation which would change the situation of the wife in respect to her husband's negligence under such circumstances, for the same consequences would have followed if the relation, instead of being that of husband and wife, had been that of parent and child, or master and servant, or if she had been an entire stranger." This is substantially the doctrine of *Thorogood* v. *Bryan*, 8 *C. B.* 114, and if that doctrine had been repudiated in Vermont, as it has been in

New Jersey (*New York, Lake Erie and Western Railroad Co.* v. *Steinbrenner*, 18 *Vroom* 161), it may fairly be inferred from the language above quoted that Carlisle *v.* Sheldon and the cases following it would have been decided differently.

I have found only two cases where the decision rested on the mere relation between husband and wife, and only one of these is directly on the point presented by the case in hand; both, however, tend to corroborate the opinion which I have formed.

In *Everts* v. *Everts*, 3 *Mich.* 580, it was held, in an action by husband and wife for an assault upon the wife, that no act or words of the husband, unless the wife was privy to or participant in them, could be proved in mitigation of damages.

In *Hoag, Administratrix,* v. *New York Central and Hudson River Railroad Co.*, 111 *N. Y.* 199, an action by an administrator of a married woman to recover damages for her death caused by the negligence of the defendant, it was adjudged that the contributory negligence of the husband, in carelessly driving across the railroad track, whereby his wife, a passenger in his vehicle, was killed, was not imputable to the wife, and so did not bar the suit of her administrator. Yet, under the New York statute, as under ours, what would have defeated the action of the injured person in case death had not ensued, would defeat the action of the administrator.

Both upon reason and authority, then, I think the jury, in the trial of this case, were properly instructed that the contributory negligence of the husband constituted no defence.

The judgment below should be affirmed.

*For affirmance*—ABBETT, DIXON, BROWN. 3.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, LIPPINCOTT, MAGIE, REED, VAN SYCKEL, BOGERT, CLEMENT, SMITH. 10.